**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

| | | |
|---|---|---|
| KARLA NEWBOLES, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CAROLYN W. COLVIN, Acting | * | No. 3:14CV00159-JJV |
| Commissioner, Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Karla Newboles, appeals the final decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Title II of the Social Security Act and for supplemental security income benefits under Title XVI of the Act.  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      BACKGROUND**

On September 10, 2008, Ms. Newboles protectively filed for benefits due to back problems, a herniated and bulging disc, elbow surgery, anxiety, and panic attacks.  (Tr. 321, 415)  An Administrative Law Judge ("ALJ") denied Ms. Newboles's claims in an October 15, 2010, decision, but the ruling was remanded by the Appeals Council.  (Tr. 108-134)  A second ALJ denied her claims on April 9, 2012, but the Appeals Council again remanded the case.  (Tr. 135-166)

At Ms. Newboles's request, an ALJ held a third hearing on September 9, 2013, where Ms. Newboles appeared with her lawyer.  At the hearing, the ALJ heard testimony from Ms. Newboles and a vocational expert ("VE").  (Tr. 82-105)

The ALJ issued a decision on November 8, 2013, finding that Ms. Newboles was not disabled under the Act.  (Tr. 10-22)  The Appeals Council denied Ms. Newboles's request for

1

review, making the ALJ's decision the Commissioner's final decision.  (Tr. 1-3)

Ms. Newboles, who was forty-six years old at the time of the third hearing, has a high school education and past relevant work as an assembly line worker and telemarketer.  (Tr. 14, 86-87)

## II.    DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Ms. Newboles had not engaged in substantial gainful activity since April 10, 2008, and she had the following severe impairments: COPD, degenerative disc disease of the lumbar spine, obesity, right lateral epicondylitis, depression, and anxiety.  (Tr. 12)  However, the ALJ found that Ms. Newboles did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (*Id.*)

According to the ALJ, Ms. Newboles has the residual functional capacity ("RFC") to perform sedentary, unskilled work.  However, she is limited to work that does not involve climbing ladders, ropes or scaffolds, does not expose her to hazards or concentrated exposure to odors, fumes, or gases, and allows her to occasionally perform all remaining postural functions.  The work may involve no more than occasional right upper extremity overhead reaching and occasional right hand fingering and gross dexterity activities.  She can perform work that involves only occasional changes to the work place setting; where interpersonal contact is no more than incidental to the work performed; supervision is simple, direct, and concrete; and the complexity of one or two step tasks is learned and performed by rote with few variables and little judgment.  The VE testified that the

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2]420 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

jobs available with these limitations were call out operator and surveillance system monitor.  (Tr. 102-103)  Accordingly, the ALJ determined that Ms. Newboles could perform a significant number of jobs existing in the national economy, and found she was not disabled.

## III.    ANALYSIS

### A.    Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision.[3]  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

### B.    Ms. Newboles's Argument for Reversal

Ms. Newboles asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence.  Specifically, she contends that the ALJ erred by giving her treating physician's opinion less weight than other opinions in the records.  (Doc. No. 13)  Ms. Newboles points out that her treating physician's 2012 and 2013 Medical Source Statements indicate that she cannot perform even sedentary work.  (Tr. 1716-1717, 1784-1785)

An ALJ may discount or even disregard the opinions of a treating physician, when they are

---

[3]*Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4]*Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5]*Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

inconsistent or where other medical assessments are better supported.[6]   Here, there is substantial evidence to support the ALJ's decision to give little weight to the treating physician's medical source statements.

**Objective MRI Evidence** -- After Ms. Newboles had a car accident in April 2008, an MRI revealed a disc herniation at L5-S1 but there was no "nerve root displacement" and the S1 was only "slightly compress[ed]." (Tr. 1051, 1057, 1163)  MRIs from February and November 2009 again revealed "no significant nerve root compression." (Tr. 1179, 1279)  An April 15, 2011, MRI noted the condition was "unchanged since 11/18/2009." (Tr. 1590)  Another MRI in April 2014 revealed no change. (Tr. 1844)

**Opinion of Specialists**[7] -- In July 2008, Dr. Cagle, a neurosurgeon, cleared Ms. Newboles for "light duty only work for another month or so" and anticipated that she "should be able to return to work." (Tr. 1055)  He noted that there was no "biomechanical reason at this point to completely keep her off work from a neurosurgical standpoint." (Tr. 1055)  In September 2008, a pain management doctor noted that the "patient has improved and [she saw] no reason for not returning to full duty.  Will release her to full duty." (Tr. 1070)

In March 2009, a second neurosurgeon determined that Ms. Newboles's "neurologic exam is essentially normal except for some pain on the straight leg raising of either leg." (Tr. 1231)  He did not believe that surgery was necessary and recommended "non-narcotic analgesic pain medication and avoidance of activities that cause pain." (*Id.*)  In September 2009, yet another neurologist concluded that there was "nothing that requires surgical intervention." (Tr. 1339)

---

[6]*Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).

[7]*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Importantly, each of these assessments involved an in-patient visit as well as review of the MRIs.

**Conservative, Routine Treatment**[8] -- Ms. Newboles testified that her doctor wanted to treat the impairment with pain management and exercises, rather than surgery.  (Tr. 96)  Additionally, Ms. Newboles advised her doctor that her back "pain is always at 9 or 10"; yet, at the same visit the doctor noted a pain scale of 0.  (Tr. 1702-1704).  As the ALJ noted, more often than not, it appears that Ms. Newboles's reported pain scale was 0.  (Tr. 1484, 1579, 1610, 1614, 1670, 1674, 1677, 1679, 1681,  1702, 1731, 1742, 1747)  In fact, most of Ms. Newboles's visits to her treating physician were for either medication refill or "follow up" on her on-going conditions.  Though the doctor repeatedly noted "chronic back pain," he indicated that she was "doing well on current dosage of medication" in May and June 2013.[9]  (Tr. 1796, 1805)  Finally, though Ms. Newboles's treating physician saw her more than the specialists, it does not appear that each time he was physically assessing her back pain; rather, he simply was refilling her prescriptions.

Additionally, though Ms. Newboles claims she can only see her general practitioner to treat her back because she has no insurance, she has been smoking between one and two packs of cigarettes a day for the past twenty years.  (Tr. 97, 1057, 1315, 1618, 1770)  Smoking is an expensive, ongoing habit that can be considered when weighing Ms. Newboles's credibility.[10]

---

[8]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[9]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

[10]*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication.").

**Failure to Follow Treatment**[11] -- Ms. Newboles's doctors repeatedly recommended that she lose weight, and though she lost some weight, she remains overweight, a condition that no doubt exacerbates both her back and breathing issues.  (Tr. 1728, 1731, 1735, 1804)  Additionally, Ms. Newboles continues to smoke after repeatedly being advised to stop by her to doctors.  (Tr. 1058, 1763)  Importantly, smoking directly exacerbates her breathing issues.

**Activities of Daily Living** -- Ms. Newboles' treating physician indicated that she could sit less than two hours in an eight-hour work day and for no more than ten minutes at a time. However, the ALJ noted that Ms. Newboles could perform light house work, drive a car, do the laundry with breaks, and sit while her mother cooks meals.  (Tr. 14)

Two other activities are also worth noting.  In 2009, Ms. Newboles reported that she "[w]ent to the casino to get out of the house" and "shops independently but needs assistance loading and unloading items." (Tr. 1176)  In February 2011, Ms. Newboles went on a trip to Harrison, Arkansas, "4 1/2 hours away [from] Corning" where she lives. (Tr. 1524)  This extensive travel is inconsistent with the severity of restrictions indicated by Ms. Newboles's treating physician.   The Court recognizes that the assessment was made over a year after the trip to Harrison, but again, the MRI results indicate that Ms. Newboles's condition had not worsened.

While there may be evidence that Ms. Newboles continues to have limitations related to her impairments, the ALJ's finding that she could perform sedentary work is supported by the record.[12]

---

[11]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

[12]*Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.").

IV.     **CONCLUSION**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED this 30th day of December, 2014.

_____

JOE J.  VOLPE
UNITED STATES MAGISTRATE JUDGE